[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
PRELIMINARY MEMORANDUM OF DECISION ON REQUEST FOR PSYCHIATRIC RECORDS
In this case the plaintiff slipped and fell in the defendant's building. She brought suit because of her injuries and one of her claims is that as a result of the defendants negligence her "ability to enjoy life's activities" was impaired including her ability to work and she suffered a loss of income as a result of her inability to work.
During her deposition the plaintiff testified that because of the injury she received, she became depressed and sought psychiatric counselling and treatment. As a result of this depression she could not enjoy various life activities — skiing and gardening. The lack of exercise and medication prescribed for her condition caused her to gain a substantial amount of weight. It is unclear whether there is a claim that the depression was a factor in the lost wage claims. But it would appear that the condition contributed to and might still inhibit the plaintiff's ability to engage in and enjoy life's activities.
Under our statutes a person's psychiatric history and counselling are, as they should be, given the utmost confidentiality and psychiatrists and psychologists should not be required to divulge patient history and treatment. It would discourage people from seeking help for mental health problems. But these statutes are enacted for the patient's benefit. Thus reading § 52-146 (c)(a)(4) defining "consent" and subsection which lists situations where "consent" is not necessary, it would seem apparent that the patient herself can give consent to the disclosure of her communications and records. The requirements of consent must of course be complied with; the statute requires that such consent be "given in writing by the person or his authorized representative." Barring a situation where a psychologist has reason to believe the patient is incompetent and has no "authorized representative" a psychologist cannot refuse CT Page 7200 to turn over patient records to the patient who has signed the appropriate consent form.
Furthermore, under subsection (2) of the statute it says that: "If, in a civil proceeding, a person introduces his [sic] psychological condition as an element of his [sic] claim . . . and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and the psychologist be protected consent shall not be required for the disclosure of such records."
From her deposition testimony and representations made at the hearing on this matter, it seems clear that the plaintiff intends to rely on the depression she claims resulted from the accident to support and enhance her claim for impairment of enjoyment of life's activities. The purpose of this would be to increase her claim for money damages. Under these circumstances and given the damage claim, the court would be hard put to find that the interests of justice prevent the disclosure of this maternal to opposing counsel.
Absent a withdrawal of her claim for loss of enjoyment of life's activities the defendant would appear to be entitled to receive the requested patient records.
Two practical problems have arisen, however. It has been represented that the doctor refuses to turn over the relevant reports to his own patient, the plaintiff, or her attorney so query whether he will even deliver them after a court finding that there must be disclosure under § 52-146 (c). The answer here seems easy. The doctor has no authority or right to refuse to turn over the requested material if a properly executed consent is presented to him or if the court determines disclosure is necessitated due to his patient's claim as a plaintiff for money damages.[1] The Confidentiality statutes were enacted for the patient's benefit not for the doctor's. Nor was there any intent to give mental health providers inherent authority to refuse to disclose materials at their own discretion and despite the statutory language the statutes themselves recognized and gave life to the privilege in the first place.
But the plaintiff has raised a more substantial problem. Counsel is concerned that within the records there may be included information and material wholly unrelated to the claim CT Page 7201 or a defense to the claim, disclosure of which will cause the plaintiff unnecessary embarrassment and invade her privacy interest.
The court has suggested the following procedure which counsel appear willing to agree to: The plaintiff will sign a written consent form prepared by counsel for the doctor, the required material will be delivered to the attorney at which time the doctor will be told the materials will be inspected by the plaintiff's counsel to determine if he is willing to deliver the reports to defense counsel. If plaintiff's counsel, upon inspection of the material, concludes all or a portion of the report should not be delivered to defense counsel then the court will make an in camera inspection to determine if any material should be delivered to defense counsel. If plaintiff's doctor is unwilling to turn the reports over to his patient or her lawyer and/or the plaintiff is unwilling to have the court make an in camera inspection, then the court will entertain a motion striking those, portions of the damage claim which, in the court's opinion, would require their delivery to opposing counsel. For protection of counsel, the court would suggest that the plaintiff in writing specifically authorize him to examine her records and turn them over to opposing counsel if he deems this appropriate or if not plaintiff's written authorization to have the court make an in camera inspection precedent to the court making its decision on the turning over of material to defense counsel.
The court would also request that counsel for the plaintiff deliver a copy of this decision to the plaintiff and her doctor so that they can understand the basis of the court's ruling in what is a sensitive and personal matter. Also the court is willing to order that any material inspected by it be sealed and to further order that if reports are turned over to defense counsel they can only be examined by counsel and counsel's expert and other vise must be kept sealed in defense counsel's file. Any reports generated by the expert and the reports themselves, must be mailed in sealed envelopes from counsel to the expert and from the expert to counsel.
CORRADINO, J.